Official Form 420A (Notice of Motion or Objection) (12/16)



FILED JUN 10 2019
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

# United States Bankruptcy Court
For the District of Columbia

In Re **Tracey Turner's Chapter 13 Bankruptcy case, case no. 19-00206-SMT**

Debtor
Address: 2901 North Capitol St NE, Washington DC 20002

Last four digits of Social Security No (if any): 7884

---

## Notice of Motion to Lift the Automatic Stay in Pending DC Superior Court Case 2018 CA 007895

Christian Dorman has filed papers with the court to seek the relief of lifting the stay on pending DC Superior Court Case 2018 CA 00785.

Date: 6/10/2019

Signature: *[signature]*

Name: Christian Dorman

Address: 2020 3rd St NE, Washington DC 20002



RECEIVED Mail Room JUN 11 2019 Angela D. Caesar, Clerk of Court U.S. Bankruptcy Court, District of Columbia

## Motion filed with Regard to Pending Chapter 13 Bankruptcy Case for Tracey Turner, Case no. 19-00206-SMT:

## Motion to Lift the Automatic Stay in Pending DC Superior Court Case 2018 CA 007895

From: Christian Dorman; 2020 3rd St NE Washington DC, 20002; 808-286-6408

I am a creditor listed on Tracey Turner's bankruptcy Chapter 13 filing as amended on 6/5/2019. I am moving to lift the automatic stay on pending DC Superior Court Case 2018 CA 007895, pending **since November 2018** and recently stayed based on this bankruptcy filing. This case is related to fraud committed by Tracey Turner on me during business dealings during the last 2 years. **This debt is not dischargeable due to the obvious fraud and the automatic stay should be lifted due to the extensive time I have spent litigating it in DC Superior and 7 months it has already been pending there.** This claim is described in depth in the DC Superior Court case's history, and in the proof of claim filed 6/10/2019 with this Court as well. **Case 2018 CA 007895 was filed in November 2018 and since then I have received no actual response from Mr. Turner** and his attorney as to a core issue that will also relate here – that fraud was committed (I am alleging, according to discussions with and documentation from the DCRA, to have been given a fraudulent business license by Mr. Turner which would make him liable under the DC Consumer Protection Act and under simple Fraud for the disastrous business dealings that transpired). This case is already ongoing in DC Superior Court and in the interest of justice and efficiency if the automatic stay was lifted, that court could rule definitively on to what extent I should be owed money (including the issue of treble and punitive damages) and whether that money owed is based on fraud. **The amount of money owed is needed to determine whether Mr. Turner should be allowed to file Chapter 13 in the first place** (if his debt would go over the debt limit, and because this I believe should be considered a substantial "business" debt), **and if this debt would be dischargeable** – under 11 USC § 523 sections (a)(2)(A) and (a)(2)(B) I believe this should not be dischargeable in bankruptcy (based on fraud).

To support this claim, I have attached the Signed Contract with Mr. Turner from 2017, including the fraudulent DC "business license" Tracey Turner provided me in 2017 when the original contract was signed **[attachment 1]** (as seen and further explained in the proof of claim and complaint filed in DC superior) and the DCRA's official conclusion provided to me **[attachment 2]** that Tracey Turner never had a license, which therefore proves that he must have acted fraudulently by

giving me false information (and leading me to give him money on these false pretenses). The Contract in attachment 1 was provided as seen – with the license attached (and corresponding insurance information, which was also, as stated by the insurance company when called during the DC Superior case filing, filed in the days after signing this while Mr. Turner continually stated they had insurance) – when it was signed.

In summary, I, the creditor Christian Dorman, have already expended substantial time in DC Superior Case 2018 CA 007895 operating as a pro se litigant fighting for justice due to the fraudulent dealings I endured. To reiterate, <u>**this debt is not dischargeable due to the obvious fraud and the automatic stay should be lifted in the interest of justice.**</u>

Name: Christian Dorman (Pro Se)
Signature: *[signed]*

# Turner Development Renovation Contract

*CLERK US DISTRICT & BANKRUPTCY COURTS*
*2019 JUN 10 PM 6:31*
*RECEIVED*

This contract was executed on _____11/09/17_____ with **Turner Development LLC (Contractor)** and **Christian Dorman (Owner)** for the construction of a single-family residence. The address of the property address is: **2020 3rd St NE, Washington DC 20002**.

The Contractor and Owner agree to the following task:

1. **Contract Documents.**

   The terms of this contract are layout in the attached spreadsheet named 2020 3rd ST NE scope of work specifically listed in Exhibit A.

2. **The Work.**

   Unless otherwise specifically noted, Builder shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, transportation, and other facilities and services necessary for the proper execution and completion of the residence. The work shall be done substantially in conformance with the plans and specifications that have been initialed or signed by each party. The schedule is noted as the following:

   1. 11/10/17- Completed a complete schedule of task and completion dates
   2. 11/13/17 – Construction work Begins
   3. 01/15/18 – Construction Work is completed

3. **Contract Price.**

   Owners agree to pay the total contract price for all labor and materials furnished and work performed by Turner Development LLC, of **$80,000.00 Dollars**, subject to additions and deletions by change order as provided in paragraph 11.

   The parties agree that the allowances are not to be construed as bids by Contractor and that the allowances may vary from the actual cost based on Owners' selections. If the cost of Owner-selected materials or their installation exceeds the material or installation allowance, the amount of that excess will be added to the next progress payment or the final payment. If the amount is less than the allowance amount, that amount will be subtracted from the final amount of the contract.

4. **Payments.**

   The contract price will be paid as follows:

    A.    **$30,000.00** as a deposit upon signing the contract, receipt of which is hereby acknowledged.

    B.    Based on contractual agreement for payment Owners shall make the following payments:

    1.    **Initial Deposit - 30,000.00 - 11/09/17**
    2.    **Second Deposit - 25,000.00 - 12/31/17**
    3.    **Final Payment - 25,000.00 - 3/1/18**

Payments due and unpaid shall bear interest at the rate of 12 % per month payable to Turner Development from the date the payment is due. If Owners fail to pay Contractor within seven (7) days of the date the payment is due through no fault of Builder, a lien will be placed on the property until payment and late fees are paid in full.

5.    **Acceptance, Final Payment, and Occupancy.**

Upon receipt of written notice that the work is ready for final inspection and acceptance, Owners will promptly inspect the work. Owners will promptly pay (or cause to be paid) the balance due under the contract less an amount equal to the cost to complete any missing or unfinished punchlist items.

6.    **Commencement and Completion.**

The work will begin promptly after any other contingencies are cleared, all permits have been the work will be substantially completed within 60 days from the date all the contingencies are met. Any time lost because of change in plans or specifications requested by Owners, other acts of Owners, weather conditions not reasonably anticipated, or any other conditions that are not within Contractor's control shall be added to the specified time of completion and Contractor shall not be liable for such delay.

7.    **Selections.**

Builder will provide Owners with information to help them select allowance items, materials, and colors required during the construction process. All selections must be made within____3____days of request by Builder.

8.    **Permits, Fees, and Tests.**

Contractor shall be responsible for all permit fees and permits including any additional fees. Contractor will assist the Owners in obtaining any such permits and licenses by completing all necessary applications and forms. If a covenant or an architectural review committee requires the approval of plans and specifications, Owners shall be responsible for obtaining these approvals. If no soil report is currently available, Owners shall provide one at their expense.

9. **Taxes.**

Owners shall pay all real property taxes and taxes imposed upon the improvements on the residence when they are due. Builder shall pay all necessary sales, use, and similar taxes on materials used in construction that are legally enacted at the time this contract is signed.

10. **Change Orders.**

Owners may, from time to time, order changes in the work which will be authorized by a written Change Order. Owners shall pay the reasonable cost of any such changes including overhead.
In the event the Contractor is required by the Owners to perform additional work for which the amount of compensation is not previously agreed upon, the Contractor shall prepare and submit to the Owners a proposal describing the estimated quantities and cost involved.

The Builder shall keep accurate, detailed and itemized records of the costs of any such change and shall report such costs to the Owners. The Builder shall furnish to the Owners all documents required by the Owners, to evidence the expenditures of the Builder because of such change.

Contractor is not responsible for unknown conditions that cannot be observed in a non-destructive inspection of the premises or conditions that differ materially from those (a) indicated or referred to in the contract documents or (b) ordinarily encountered and generally recognized as inherent in the work of the character provided for in this contract.

11. **Insurance.**

Contractor shall purchase and maintain at Contractor's own expense, all necessary workers' compensation and employer's liability insurance, commercial general liability insurance, and comprehensive automobile liability insurance to protect Builder from claims for damages because of bodily injury, including death, and for damages to property that may arise both out of and during operations under this contract.

Owners shall purchase and maintain their own liability insurance, including fire and casualty insurance upon the residence, to the full insurable value and shall name Builder as an additional insured. Each party shall issue a certificate of insurance to the other prior to construction.

12. **Owners' Obligations.**

Owners shall (a) furnish all surveys describing the physical characteristics, and utility locations for the residence and (b) secure and pay for easements necessary for the completion of the work. Owners shall furnish information and services under their control to the Contractor promptly to avoid delay.

Owners warrant that the property upon which the residence is to be built conforms to all zoning, planning, environmental, and other building requirements. Owners warrant that all utilities necessary for the completion of construction are to the property line.

13. **Supervision.**

Owners agree that the supervision of the work performed under this Agreement is under the exclusive direction of the Contractor, and Contractor shall have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work. Owners shall not interfere with the work, nor cause additional work to be carried on without the written consent of the Builder. All the work shall be done by the Contractor or subcontractors.

14. **Disputes.**

Should any dispute arise relative to the performance of this contract that the parties cannot satisfactorily resolve, then the parties agree that the dispute shall be resolved by binding arbitration conducted by a third-party law firm. The party demanding arbitration shall give written notice to the opposite party and the law firm identified promptly to handle the matter in dispute arises. In no event, however, shall a written notice of demand for arbitration be given after the date on which a legal action concerning the matter in dispute would be barred by the appropriate statute of limitations.

15. **Termination.**

If Contractor fails to supply proper materials and skilled workers; make payments for materials, labor, and subcontractors in accordance with their respective agreements; disregards ordinances, regulations, or orders of a public authority; or fails to materially comply with the provisions of the

contract, Owners may give Contractor written notice to terminate. After seven (7) days if Contractor has failed to remedy the breach of contract, Owners can give a second notice to terminate. If Contractor still fails to cure the breach within three (3) days after the second notice, Owners may terminate the contract.

16.   **Warranties.**

Contractor agrees to promptly make good, without cost to Owners, all defects due to faulty workmanship and/or materials which may appear within one (1) year from the date of completion and acceptance of the work by Owners.

_____      11/9/2017
Christian Dorman/Owner              Date

_____      11/9/17
Turner Development/Contractor       Date



3060 South Church Street P.O. Box 286
Burlington, North Carolina 27216
(Local) 336-584-8892
(Toll-Free) 800-334-5579
(FAX) 336-584-8880
(Claims FAX) 336-538-0094

## Binder Summary Sheet

**Insured:**
Turner Development LLC
2901 N Capital St NE
Washington, DC 20002

**Producer:**
2000214
Rogers & Goldbach Insurance Associates
3200 Crain Highway
Suite 300
Waldorf, MD 20603
Producing Agent: Amy Rychwalski

**Insurer:**
Scottsdale Insurance Company

**Binder ID:   NRIPY-V**

**Effective/Expiration Date:** 9/19/2017 to 9/19/2018

Term: Twelve Months

State: DC

Percent Earned: 25%

In accordance with your instructions, we have bound the following General Liability coverage; provided we receive a properly completed application and a premium payment within 12 days of the effective date shown above.

Comments: Subcontractors must carry equal limits. Certificates must be obtained by the insured. Hold Harmless agreement must be in force in favor of the named insured. Named insured must be listed as additional insured on the subcontractor's policy.

GLS-455s – Marijuana/Cannabis Products Exclusion applies.

A NEW APPLICATION IS REQUIRED EVERY TERM FOR THIS RISK.

**General Liability:**

| | | |
|---|---|---|
| $ | 2,000,000 | General Aggregate |
| $ | 1,000,000 | Products/Completed Operations Aggregate |
| $ | 1,000,000 | Personal Injury/Advertising Injury |
| $ | 1,000,000 | Each Occurrence Limit |
| $ | 100,000 | Damage to Premises Rented to You |
| $ | 5,000 | Medical Payments |
| $ | **1000 | BI/PD/P&AI Deductible Per Claimant |

91578 - Contractors-uninsured subcontractor work
    If Any

91579 - General Contractors (based on gross sales)
    Gross Sales            400,000

\* Excludes Professional, Nuclear Energy, War, Punitive, Exemplary, Asbestos, Silica, Lead, Toxic Substances, Total Pollution, Radon Gas, Mold, Spores, Fungus, EIFS (Exterior Insulation Finish Systems) or Synthetic Stucco, Biological or Chemical Materials, Known Injury or Damage, Exclusion – Losses, Claims and Litigation Preceding Inception of Policy, Property Damage Claims in Progress, Participants, Assault & Battery, Abuse or Molestation, Liquor, Communicable Disease, Employment Related Practices, Leased Workers, Voluntary Labor, New Entities, Subsidence / Earth Movement, Oral Contracts, Roofing, Radioactive Contamination, Electromagnetic Fields, Hired & Non Owned Auto, Injury To Contractors / Independent Contractors / Subcontractors, Residential Construction in CA, All Construction Operations in NY, Designated operations covered by a consolidated (wrap-up) Insurance program, Year 2000 Computer Related and Other Electronic Problems, Violations of Statutes That Govern E-Mails / Fax / Phone Calls. Classification & Contractual Liability Limitations Apply and Minimum and Deposit Premium Endorsement Applies.  Terrorism is excluded unless coverage is purchased per the requirements of the Terrorism Risk Insurance Program Reauthorization Act of 2015. This list is for informational purposes only and

★ ★ ★
**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
Muriel Bowser, Mayor

**Department of Consumer and Regulatory Affairs**
Business License Division
1100 4th Street S.W.
Washington DC 20024

Date Issued: 3/4/2016
Category: 4105
License#: 410570109969
License Period: 2/1/2016-11/30/2018

## BASIC BUSINESS LICENSE

Billing Name and Address:
TURNER DEVELOPMENT LLC

Tracey Turner

2901 North Capitol St NE
WASHINGTON, DC 20002

Premise/Application's Name and Address:
Tracey Turner

2901 North Capitol St NE
Washington, DC 20002

Registered Agent's Name and Address:
Turner Development LLC, D Turner

2901 North Capitol ST NE
WASHINGTON DC 20002

Owner's Name: Tracey Turner
Corp. Name:
Trade Name: TURNER DEVELOPMENT LLC / TURNER HOME IMPROVEMENT

| CofO/HOP#: | SSL: | Zone: | Ward: | ANC: | PERM NO. |
|---|---|---|---|---|---|
| CLASS: CEHOP1490292 | | UNITS: 1 | | | |

General Service and Repair - Gen Contr/Construction Mngr

-- THE LAW REQUIRES THIS LICENSE TO BE POSTED IN A CONSPICUOUS PLACE ON THE PREMISES --

*Melinda Bolling*
Director:
Melinda Bolling

*License Effective from the later of Issued or Start of License-Period Date

Note:
This is the license provided with this contract that was later determined by the DCRA to be fraudulent.
— CD 6/10/2019 [signature]

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS**
Business and Professional License Administration
Business License Division

*RECEIVED*



# CERTIFICATE

**I HEREBY CERTIFY** that a search of the official licensing records in the Business License Division for **Tracey Turner** revealed that:

A Basic Business **General Services and Repair** license endorsement for **"General Contractor/Construction Manager"** is not issued for the period February 1, 2016 to this date to conduct business in the District of Columbia.

**IN WITNESS WHEREOF,** I have hereunto set my hand and caused the seal of this office to be affixed as of the **20th day of August 2018**.

Melinda Bolling
Director

By: _____
Anthony R. Prather
Business License Center Manager
Business and Professional Licensing Administration